## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

DINÉ CITIZENS AGAINST RUINING OUR
ENVIRONMENT, *et al.*,

      Plaintiffs,

      v.

JOHN ASHCROFT, Attorney General,

      Defendant.

Civil Action No. 01-985 (CKK)

# FILED

MAR 2 6 2002

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## MEMORANDUM OPINION
(March 2 6, 2002)

In this action, Plaintiffs Diné Citizens Against Ruining Our Environment, Eastern Navajo Agency Uranium Workers, Leo Martinez, and Harold Platero[1] brought suit against the Department of Justice on May 10, 2001. In their Complaint, Plaintiffs ask this Court for a declaration that Defendant's failure to promulgate regulations pursuant to the 2000 amendments to the Radiation Exposure Compensation Act ("RECA") constitutes a violation of the Administrative Procedures Act and also for an order compelling Defendant to enact those regulations. In response, Defendant asserts that neither the individual Plaintiffs, nor the two associations have Article III standing to sue. After reviewing the Complaint, Defendant's Motion to Dismiss, Plaintiffs' Opposition, Defendant's Reply, the applicable law, and the record currently before it, the Court concludes that Plaintiffs do not have standing to bring this action

---

[1] Plaintiffs concede that Utah Navajo Downwinders, Northern Arizona Navajo Downwinders, and Bernie Cly may be dismissed from the lawsuit. *See* Pls.' Opp'n at 7 n.9, 10 n.11. The Court agrees to their dismissal.

1



and grants Defendant's Motion to Dismiss.[2]

# I. BACKGROUND[3]

Following the development of nuclear weapons at the end of World War II and during the pendency of the Cold War, the United States government created and tested increasingly sophisticated weapons on American soil. Compl. ¶ 1. As a result, those who worked on these projects, in uranium mines or downwind from a test explosion ("downwinders") were unaware and exposed to the dangerous radiation. *Id.* ¶ 2. Realizing the danger that the government had subjected its citizens to years later, Congress enacted RECA, 42 U.S.C. § 2210, in 1990 to make "compensation payments" to certain classes of individuals who suffer from certain illnesses associated with the radiation exposure. *Id.* ¶ 4. The original RECA provided for payment to "downwinders" who resided in certain locations and underground uranium miners. *Id.* ¶¶ 5-6.

In 2000, Congress amended RECA in several ways. *See* RECA Amendments of 2000, Pub. L. No. 106-245, 114 Stat. 501. First, Congress expanded the types of individuals eligible for benefits. *Id.* ¶ 7. Second, the amendments required Defendant, the implementing agency of RECA, to pay eligible claimants within six weeks after approval of their claim. *Id.* Third, Defendant must now construe any doubts about the eligibility of a claimant in favor of the claimant. *Id.* Finally, Defendant was required to promulgate implementing regulations for the 2000 amendments by January 6, 2001; 180 days after enactment of the amendments. *Id.* ¶ 8. As

---

[2] Plaintiffs have also filed a motion for summary judgment that is now ripe. As the Court concludes that Plaintiffs lack standing to prosecute this action, the Court does not reach the merits of Plaintiffs' summary judgment motion. Accordingly, it shall be denied as moot.

[3] For purposes of the instant motions to dismiss, the allegations of the complaints are taken as true. The facts in this section are presented accordingly, and do not constitute factual findings by this Court.

of the date of this opinion, Defendant has yet to issue these implementing regulations.  However, the regulations have been drafted and are in the process of being finalized.  Def.'s Mot., Ex. A, Decl. of Gerard W. Fisher ¶ 8.[4]  In the meantime, Defendant has accepted and has begun to process claims that have been brought pursuant to the 2000 amendments despite the lack of implementing regulations.  *Id*. ¶ 2 ("The RECA Program currently is accepting and adjudicating claims filed pursuant to the July 2000 RECA Amendments").

Currently, Plaintiffs consist of two individuals and two organizations.  The two individual Plaintiffs are Leo Martinez and Harold Platero.  Mr. Martinez suffers from physical illnesses he acquired from work as a uranium miller.  *Id*. ¶ 18.  Although not originally available for claims under the 1990 act, Plaintiffs allege that Mr. Martinez would be eligible for RECA compensation under the 2000 amendments.  *Id*.  Mr. Platero also suffers from illnesses derived from radiation exposure from his work as a uranium transport worker.  *Id*. ¶ 19.  Like Mr. Martinez, Mr. Platero was not eligible for benefits under the 1990 RECA, however, Plaintiffs also aver that Mr. Platero is now eligible for payment under the 2000 amendments.  *Id*.  Neither Mr. Martinez nor Mr. Platero have filed RECA claims.  Def's Mot. at 6-7; Pls.' Opp'n at 7 (unrebutted).

The two associations that have also filed suit on behalf of their members are Diné Citizens Against Ruining Our Environment Organization ("Diné") and Eastern Navajo Agency Uranium Workers ("Eastern Navajo").  Diné is a Navajo organization that works to address

---

[4] In a motion to dismiss premised under Rule 12(b)(1), the Court "is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction to hear the action."  *Wilderness Society v. Griles*, 824 F.2d 4, 16 n.10 (D.C. Cir. 1987) (internal citation and quotation marks omitted). *see also Haase v. Sessions* 835 F.2d 902, 906 (D.C. Cir. 1987) ("In 12(b)(1) proceedings, it has been long accepted that the judiciary may make appropriate inquiry beyond the pleadings to satisfy itself on authority to entertain the case.") (internal citations and quotation marks omitted).

issues associated with radioactive contamination.  Compl. ¶ 14.  The organization is based within
the Navajo reservation and its members include Navajo "downwinders," uranium miners,
uranium millers and ore transport workers.  *Id.*  Eastern Navajo is an organization formed in
January 1999, to help educate Navajos about the dangers of uranium radiation.  *Id.* ¶ 17.  The
organization includes uranium miners, uranium millers and ore transport workers as members.
*Id.*  In addition, both Mr. Martinez and Mr. Platero are members of Eastern Navajo.  Pls.' Opp'n
at 10, Ex. B, Decl. of Melton Martinez ¶ 2.

## II. STANDARD OF REVIEW

In order to bring suit in federal court, Plaintiffs must demonstrate Article III standing, an
"'irreducible constitutional minimum' [that] consists of three elements."  *Vermont Agency of*
*Natural Resources v. Unites States, ex rel Stephens*, 529 U.S. 765, 771 (2000) (quoting *Lujan*,
504 U.S. 555, 560 (1992)).  To satisfy Article III standing requirements, plaintiffs must show
that (1) they have suffered an injury-in-fact; (2) there is a causal connection between the
improper conduct and the injury suffered; and (3) the relief requested is likely to redress the
injury.  *Id.*; *see also Lujan*, 504 U.S. at 560-61.

Organizations are also entitled to bring suit either to advance its own interests or on
behalf of the interests of its members.  *Warth v. Seldin*, 422 U.S. 490, 511 (1975).  In this case,
Plaintiff-Organizations have brought suit on behalf of their members.  Pls.' Opp'n at 9.  To bring
a lawsuit on behalf of its members, the association must show that (1) the members would
otherwise have standing to sue in their own right; (2) the interests the association seeks to protect
are germane to the organization's purpose; and (3) neither the claim asserted nor the relief
requested requires the participation of individual members in the lawsuit.  *Hunt v. Wash. State*
*Apple Adver. Comm'n,* 432 U.S. 333, 343 (1977).  In addition, the association may not simply

make a general allegation that its members suffer some kind of harm. *See Am. Immigration Lawyers Ass'n v. Reno,* 18 F. Supp. 2d 38, 51 (D.D.C. 1998). Rather, the association must identify at least one member to allow the court to evaluate the harm. *Id.*

For purposes of ruling on a motion to dismiss for want of standing, this Court must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party. *Haase,* 835 F.2d at 906. A motion to dismiss under Rule 12(b)(1) calls the jurisdiction of the Court into question, and the plaintiffs will bear the burden of establishing that jurisdiction is proper. *District of Columbia Retirement Bd. v. United States,* 657 F. Supp. 428, 431 (D.D.C. 1987). With this standard in mind, the Court reviews Defendant's Motion to Dismiss.

### III. DISCUSSION

#### A.    Plaintiffs Leo Martinez and Harold Platero

To satisfy the test for Article III standing, Plaintiffs must first demonstrate that they have an injury-in-fact that is "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.,* 528 U.S. 167, 180 (2000). Furthermore, as the Supreme Court has continuously instructed, "[a]llegations of possible future injury do not satisfy the requirements of Art[icle] III. A threatened injury must be certainly impending to constitute injury in fact." *Whitmore v. Arkansas,* 495 U.S. 149, 158 (1990) (internal citation and quotation marks omitted).

In the instant suit, the two individual Plaintiffs contend that "they know that there is no chance that their claims for compensation will be processed or approved in light of [Defendant's] failure to implement the required regulations." Pls.' Opp'n at 7. They make this unsupported allegation, despite having never filed claims with Defendant. Both individuals state they are

"aware" that mill worker and transport worker claims are not being paid and that they therefore "*believe* that there is no chance that my claim would be processed or approved." *Id.*, Ex. C, Decl. of Harold Platero ¶ 4, Ex. D. Decl. of Leo Martinez ¶ 4 (emphasis added). The two individuals state that it would be "absolutely meaningless" to file claims under the 2000 amendments because Defendant is taking "no action . . . to process the claims of millers or miner claims." *Id.* at 8. Plaintiffs hold this view because at the time they filed their opposition to Defendant's Motion to Dismiss, the Department of Justice website indicated that 97 uranium miller claims and 24 ore transporter claims were pending without having been processed. Pls.' Opp'n at 3 (citing Ex. A, "Awards to Date" Table).

Defendant counters Plaintiffs' arguments by indicating that it is processing claims made pursuant to the 2000 RECA amendments. Def.'s Reply at 3. In fact, Defendant notes that as of the date of its Reply brief, it has reviewed thirteen mill worker claims and four ore transporter claims, all of which have been recommended for approval. Def.'s Reply at 3-4. Defendant notes that the reason 97 uranium miller claims and 24 ore transporter claims were pending when Plaintiffs searched the Department of Justice website, is because the funding only recently became available to pay these claimants. *Id.*, Ex. A., "Decl. of Gerard W. Fischer," ¶ 3 ("To date, 13 mill worker claims and four ore transporter claims have been reviewed and recommended for approval . . .[h]owever, we could not pay these, or any, claims until after the supplemental appropriations bill was signed into law on July 24, 2001.").

The Court concludes that the individual Plaintiff's claims are plainly hypothetical or conjectural and not concrete and particularized. Relying on *Lujan*, Plaintiffs contend that only general factual allegations of injury resulting from Defendant's conduct are necessary to withstand a motion to dismiss at the pleading level. 504 U.S. 555, 561 (1992). While that is

true, Plaintiffs "bear[] the burden of establishing the three elements [of standing]." *Id*. In this case, Plaintiffs have not identified *any* facts that would support a conclusion that Plaintiffs have suffered the requisite injury-in-fact. Rather, Plaintiffs rely on unsupported speculation to argue that they "know" that their claims will go unanswered. Pls.' Opp'n at 7.

Plaintiffs contend that they "cannot" file RECA claims because Defendant has not set forth implementing regulations for the 2000 amendments. Pl's Opp'n at 8. Such an assertion, however, is not only speculative, but it is incorrect. Def.'s Reply, Ex. A., "Decl. of Gerard W. Fischer" at ¶ 2 (noting that individuals similarly situated to Plaintiffs have filed claims and are having them processed). Plaintiffs unsupported allegations that their claims will go unanswered cannot satisfy the Article III standing requirement of injury-in-fact. Given the unrebutted testimony that Defendant is accepting and processing claims made pursuant to the 2000 RECA amendments, it is impossible for the Court to conclude that the individual Plaintiffs have suffered the requisite injury-in-fact, since neither Mr. Platero nor Mr. Martinez have made any attempt to file RECA claims. Plaintiffs Platero and Martinez simply fail the first part of the test for Article III standing, and, therefore, the Court concludes that it lacks subject matter jurisdiction to hear their action.

**B.    Plaintiff Eastern Navajo Agency Uranium Workers**

As noted, *supra*, an organization can have Article III standing to sue on behalf of its members. First, an association will have standing to sue only when its members would have standing to sue in their own right. *Friends of the Earth*, 528 U.S. at 181. Organizations are "obligated to allege facts sufficient to establish that one or more of [their] members has suffered, or is threatened with, an injury." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 487 n.23 (1982). Put differently, the critical

question in this case is whether the organizations have satisfactorily "allege[d] that [their] members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." *Warth*, 422 U.S. at 511.

A careful review of the record reveals that Plaintiff Eastern Navajo does not have Article III standing. In order for Eastern Navajo to be able to sue for its members it must allege that at least one of its members suffers an injury-in-fact. However, the only members advanced by Eastern Navajo as having an injury are the two individual plaintiffs, Leo Martinez and Harold Platero. Pls.' Opp'n at 10. As the previous analysis has indicated, both Mr. Martinez and Mr. Platero have failed to demonstrate, on their own, the requisite injury-in-fact. Eastern Navajo does not point to any other member who suffered the requisite injury-in-fact to confer standing to this organization. Without such a showing, Eastern Navajo does not have standing to sue.

**C.   Plaintiff Diné Citizens Against Ruining Our Environment**

Plaintiff Diné also cannot establish Article III standing. While Plaintiff Eastern Navajo attempted to assert standing by identifying Plaintiffs Leo Martinez and Harold Platero as members, Diné does not identify a single individual member that independently would have Article III standing to pursue this claim. Plaintiff as much as recognizes this when they request in a footnote of their opposition brief for more time to gather the necessary facts to assert organizational standing on behalf of Diné and amend their complaint. Pls.' Opp'n at 10 n.11. As of the date of this opinion, nearly eight months since the filing of Plaintiffs' opposition brief, Plaintiffs have submitted no further evidence to support Diné's argument for standing.

Certainly a footnote to an opposition brief is not the place to move to amend a complaint. *See* LCvR 7.1(i) ("A motion for leave to file an amended pleading shall be accompanied by an

original of the proposed pleading as amended.  The amended pleading shall be deemed to have

been filed and served by mail on the date on which the order granting the motion was entered.").

However, even if the Court treated the request to amend the pleadings as having been properly

made, Diné has made no effort to come forward with relevant information in a timely fashion

that would show that Diné had organizational standing.  Particularly when Diné has conceded

that it did not currently have the information and particularly when Diné knew it was facing a

motion to dismiss, the Court finds Diné's lack of effort to assert a reasoned basis for Diné to

have standing unjustifiable.  Thus, since Diné has not pointed to any of its members who have

standing to sue in their own right, their claim must also be dismissed for lack of standing.  *See*

*Warth*, 422 U.S. at 501 ("At the same time, *it is within the trial court's power* to allow or to

require the plaintiff to supply, by amendment to the complaint or by affidavits, further

particularized allegations of fact deemed supportive of plaintiff's standing.") (emphasis added).

## IV.  CONCLUSION

Based on the foregoing, the Court finds that all four Plaintiffs have failed to establish

Article III standing.  Having failed to do so, the Court concludes that the Complaint shall be

dismissed for lack of subject matter jurisdiction.  While the Court respects and appreciates

Plaintiffs' position and the view of the Congress that the problem of radiation exposure has been

a sad chapter in our nation's past, this case, as presented to this Court at this time, is

nonjusticiable. An appropriate Order accompanies this Memorandum Opinion.


COLLEEN KOLLAR-KOTELLY
United States District Judge

9

Copies to:

James Bryan Dougherty
709 Third Street, SW
Washington, DC 20024

Steven Sugarman
BELIN & SUGARMAN
618 Paseo de Peralta
Sante Fe, NM 87501

Robin M. Earnest
10th Floor
U.S. ATTORNEY'S OFFICE
Civil Division
555 Fourth Street, NW
Washington, DC 20530